# KEELER *v.* STANDARD FOLDING BED COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 52. Submitted March 20, 1894. — Decided April 8, 1895.

One who buys patented articles of manufacture from one authorized to sell them at the place where they are sold becomes possessed of an absolute property in such articles, unrestricted in time or place.

Whether a patentee may protect himself and his assignees by special contracts brought home to the purchasers is not a question before the court and upon which it expresses no opinion.

The complainants were assignees, for the State of Massachusetts, of certain letters patent granted to one Welch, for an improvement in wardrobe bedsteads. The Welch Folding Bed Company owned the patent rights for the State of Michigan. The defendants purchased a carload of said beds from the Welch Folding Bed Company, at Grand Rapids, Michigan, for the purpose of selling them in Massachusetts, and afterwards sold them there and were still engaged in selling such beds in Boston. *Held*, that the defendants having purchased the patented articles in Michigan from the assignee of the patent for the territory included in that State, had a right to sell them anywhere within the United States, including Massachusetts, where the patent rights had been assigned to another assignee.

The previous cases bearing on this point considered and reviewed.

THE Standard Folding Bed Company, a corporation of the State of New York, filed in the Circuit Court of the United States for the District of Massachusetts a bill of complaint against Keeler & Brother, partners doing business in the city of Boston.

By an agreed state of facts it appears that the complainants are assignees, for the State of Massachusetts, of certain letters patent granted to one Lyman Welch, for an improvement in wardrobe bedsteads; that the Welch Folding Bed Company own the patent rights for the State of Michigan, and that the defendants purchased a carload of said beds from the Welch Folding Bed Company, at Grand Rapids, Michigan, for the purpose of selling them in Massachusetts, and that they afterwards sold and are now engaged in selling the said beds in Boston.

The conclusion in the court below was that the defendants were not protected from the claim of the Massachusetts assignee by having purchased the patented articles from the Michigan assignee, and accordingly there was an injunction and final decree in favor of the complainants, from which an appeal was taken to this court.

*Mr. Causten Browne* and *Mr. J. Henry Taylor* for appellants.

*Mr. Edwin T. Rice* for appellees.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

It is provided in section 4884 of the Revised Statutes that " every patent shall contain . . . a grant to the patentee, his heirs, or assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States and Territories thereof ; " and in section 4898 that " every patent or any interest therein shall be assignable in law by an instrument in writing, and the patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his patent to the whole or any specified part of the United States."

Where the patentee has not parted, by assignment, with any of his original rights, but chooses himself to make and vend a patented article of manufacture, it is obvious that a purchaser can use the article in any part of the United States, and, unless restrained by contract with the patentee, can sell or dispose of the same. It has passed outside of the monopoly, and is no longer under the peculiar protection granted to patented rights. As was said by Mr. Justice Clifford, in *Goodyear* v. *Beverly Rubber Co.* (1 Cliff. 348, 354): " Having manufactured the material and sold it for a satisfactory compensation, whether as material or in the form of a manufactured article, the patentee, so far as that quantity of the product of his invention is concerned, has enjoyed all the rights secured to him by his letters patent, and the manufactured article, and the material of which it is composed, go to the purchaser for a valuable consideration, discharged of all the rights of the patentee previously attached to it, or impressed upon it, by the act of Congress under which the patent was granted."

Suppose, however, the patentee has exercised his statutory right of assigning by conveying to another an exclusive right under the patent to a specified part of the United States,

what are the rights of a purchaser of patented articles from the patentee himself within the territory reserved to him? Does he thereby obtain an absolute property in the article, so that he can use and vend it in all parts of the United States, or, if he take the article into the assigned territory, must he again pay for the privilege of using and selling it? If, as is often the case, the patentee has divided the territory of the United States into twenty or more "specified parts," must a person who has bought and paid for the patented article in one part, from a vendor having an exclusive right to make and vend therein, on removing from one part of the country to another, pay to the local assignee for the privilege of using and selling his property, or else be subjected to an action for damages as a wrongdoer? And is there any solid distinction to be made, in such a case, between the right to use and the right to sell? Can the owner of the patented article hold and deal with it the same as in case of any other description of property belonging to him, and, on his death, does it pass, with the rest of his personal estate, to his legal representatives, and thus, as a part of the assets to be administered, become liable to be sold?

These are questions which, although already in effect answered by this court in more cases than one, are now to be considered in the state of facts disclosed in this record.

In *Wilson* v. *Rousseau*, 4 How. 646, 688, and in *Bloomer* v. *McQuewan*, 14 How. 539, it was held that the purchasers of patented machines had the right to continue the use of such machines, without again paying royalty, although the patent was twice extended. In the latter case it appeared that McQuewan, the defendant, had purchased his machines, not from the original patentee or from a territorial assignee, but from a purchaser from the latter. Therefore that case is authority for the proposition that the purchaser of a patented machine has not only the right to continue the use of the machine as long as it exists, but to sell such machine, and that his vendee takes the right to use.

The scope and effect of those decisions were thus expressed by Mr. Justice Clifford, in *Mitchell* v. *Hawley*, 16 Wall. 544,

546, 547 : "Patentees acquire by their letters patent the exclusive right to make and use their patented inventions and to vend to others to be used for the period of time specified in the patent, but when they have made one or more of the things patented, and have vended the same to others to be used, they have parted to that extent with their exclusive right, as they are never entitled to but one royalty for a patented machine, and consequently a patentee, when he has himself constructed a machine and sold it without any conditions, or authorized another to construct, sell, and deliver it, or to construct, use, and operate it, without any conditions, and the consideration has been paid to him for the thing patented, the rule is well established that the patentee must be understood to have parted to that extent with all his exclusive right, and that he ceases to have any interest whatever in the patented machine so sold and delivered or authorized to be constructed and operated. Where such circumstances appear, the owner of the machine, whether he built it or purchased it, if he has also acquired the right to use and operate it during the lifetime of the patent, may continue to use it until it is worn out, in spite of any and every extension subsequently obtained by the patentee or his assigns."

These cases were followed, and a step further taken, in the case of *Adams* v. *Burke*, 17 Wall. 453, 456. There Lockhart and Seelye owned, by assignment, all the right, title, and interest which patentees had in a certain patented coffin lid, in a circular district of a diameter of ten miles, whereof the city of Boston was the centre. Adams, also by assignment, was the owner of all other rights under the patent. Burke, an undertaker, carried on his business at Natick, and within the territory covered by the patent as owned by Adams. To a bill for an infringement, filed by Adams in the Circuit Court of the United States for the District of Massachusetts, Burke pleaded that the patent coffins used by him in his business were purchased by him from Lockhart and Seelye, and were sold to him without condition or restriction.

The validity of his plea was sustained by the Circuit Court, and its decree dismissing the bill was affirmed by this court.

Mr. Justice Miller, in giving the opinion of the court, said : " In the essential nature of things, when the patentee, or the person having his right, sells a machine or instrument whose sole value is in its use, he receives the consideration for its use, and he parts with the right to restrict that use. The article, in the language of the court, passes without the limit of the monopoly. That is to say, the patentee, or his assignee, having in the act of sale received all the royalty or consideration which he claims for the use of his invention in that particular machine or instrument, it is open to the use of the purchaser without further restriction on account of the monopoly of the patentee. . . . A careful examination of the plea satisfies us that the defendant, who, as an undertaker, purchased each of these coffins, and used it in burying the body which he was employed to bury, acquired the right to this use of it, freed from any claim of the patentee, though purchased within. the ten-mile circle and used without it."

It is obvious that necessarily the use made by Burke of these coffins involved a sale in every case. He did not put them to his personal use, unless we are permitted to suppose that he was himself buried in each one of the coffins. He bought the coffins for the purpose of selling them to others, and the legal significance of the decision upholding his defence is that a person who buys patented articles from a person who has a right to sell, though within a restricted territory, has a right to use and sell such articles in all and any part of the United States ; that when the royalty has once been paid to a party entitled to receive it, the patented article then becomes the absolute, unrestricted property of the purchaser, with the right to sell it as an essential incident of such ownership.

That this was the meaning of this decision, not only appears from the language used, and from the necessary legal effect of the conclusion reached.as between the parties, but from the dissenting opinion of Justice Bradley, whose reasoning went wholly upon the assumption that such was its meaning.

*Boesch* v. *Gräff*, 133 U. S. 697, is cited by the defendant in error. But it is not out of line with the previous cases. The exact question presented was whether a dealer residing in the

United States could purchase in another country articles patented there from a person authorized there to sell them, and import them to and sell them in the United States without the license or consent of the owners of the United States patent, and the court held that the sale of articles in the United States under a United States patent cannot be controlled by foreign laws. In this case neither the patentee or any assignee had ever received any royalty or given any license to use the patented article in any part of the United States.

*Hobbie* v. *Jennison*, 149 U. S. 355, is interesting as the last opinion delivered by Mr. Justice Blatchford.

The facts were these: An assignee for Michigan, of a patent for an improvement in pipes for conveying gas, water, and other fluids, made, sold and delivered in Michigan pipes made according to the patent, knowing that they were to be laid in the streets of a city in Connecticut, a territory the right for which the seller did not own under the patent, and they were laid in that city. An action at law was brought in the Circuit Court of the United States for the Eastern District of Michigan by Hobbie, who was the owner, by assignment, of the patent for the State of Connecticut, against Jennison, who, under his rights as assignee for Michigan, made and sold patented pipes to the Hartford Steam Supply Company, which had a contract to lay pipes in Hartford, Connecticut. A jury was waived, and the cause was tried before Judge Brown, the District Judge, now a member of this court. The decision and judgment of the Circuit Court were in favor of the defendant, and that judgment was affirmed here.

What was principally discussed was the true interpretation of *Adams* v. *Burke*, and an attempt was made to distinguish the case in hand by the fact, made affirmatively to appear, that the sale was made with the knowledge and intention on the part of the defendant that the use would be at Hartford.

But this court was of the opinion that the case of *Adams* v. *Burke* was applicable; that the sale was a complete one in Michigan, and that neither the actual use of the pipes in Connecticut, nor a knowledge on the part of the defendant

that they were intended to be used there, would make him liable.

This brief history of the cases shows that in *Wilson* v. *Rousseau*, 4 How. 646, and cases following it, it was held that, as between the owner of a patent on the one side, and a purchaser of an article made under the patent on the other, the payment of a royalty once, or, what is the same thing, the purchase of the article from one authorized by the patentee to sell it, emancipates such article from any further subjection to the patent throughout the entire life of the patent, even if the latter should be by law subsequently extended beyond the term existing at the time of the sale, and that in respect of *the time* of enjoyment, by those decisions the right of the purchaser, his assigns or legal representatives, is clearly established to be entirely free from any further claim of the patentee or any assignee ; that in *Adams* v. *Burke*, 17 Wall. 453, it was held that, as respects *the place* of enjoyment, and as between the purchaser of patented articles in one specified part of the territory and the assignee of the patent of another part, the right once legitimately acquired to hold, use, and sell will protect such purchaser from any further subjection to the monopoly ; that in *Hobbie* v. *Jennison*, 149 U. S. 355, it was held that, as between assignees of different parts of the territory, it is competent for one to sell the patented articles to persons who intend, with the knowledge of the vendor, to take them for use into the territory of the other.

Upon the doctrine of these cases we think it follows that one who buys patented articles of manufacture from one authorized to sell them becomes possessed of an absolute property in such articles, unrestricted in time or place. Whether a patentee may protect himself and his assignees by special contracts brought home to the purchasers is not a question before us, and upon which we express no opinion. It is, however, obvious that such a question would arise as a question of contract, and not as one under the inherent meaning and effect of the patent laws.

The conclusion reached does not deprive a patentee of his just rights, because no article can be unfettered from the claim

of his monopoly without paying its tribute. The inconvenience and annoyance to the public that an opposite conclusion would occasion are too obvious to require illustration.

These views render it unnecessary to consider other features of the case.

The decree of the court below is reversed, and the cause remanded with directions to dismiss the bill.

*Reversed.*

MR. JUSTICE BROWN, with whom concurred THE CHIEF JUSTICE and MR. JUSTICE FIELD, dissenting.

The exact question presented by the record in this case is, whether a dealer in patented articles, doing business in Massachusetts, and knowing that the right to manufacture, use, and sell such articles within that State belongs to another, may purchase such articles of the patentee in Michigan, in the ordinary course of trade, for the purpose of resale in Massachusetts, and may sell them there in defiance of the rights of the licensee.

The right to do this is supposed to arise from the fact that the defendants, having once paid tribute to the patentee by purchasing the patented articles of him, thereby acquired the right to deal with such articles as they please, notwithstanding that another has bought and paid for the exclusive right to manufacture and sell them within their territory. The cases in this court which are supposed to justify, or at least to lead up to this conclusion, seem to me to fall far short of this somewhat startling result.

In *Wilson v. Rousseau*, 4 How. 646, it was decided, (1) that the patent act of 1836 authorized an extension of a patent to be granted to the administrator of the patentee, and that such extension inured to the benefit of such administrator, and not to an assignee under the original patent; (2) that the plaintiff, claiming title under the extension to the administrator, could maintain an action for infringement of the patent within the territory specified in the assignment, against any person not claiming under such assignment; and (3) that an

assignee who had purchased the right and was in use of the patented machine at the time of the renewal had the right to continue such use during the extension. Although cited in the opinion of the court, I am unable to see that it has any bearing upon the case under consideration.

The case of *Bloomer* v. *McQuewan*, 14 How. 539, 549, did not differ materially from the prior one, although the Chief Justice draws a distinction between the grant of a right to make and sell the machine, and the grant of a right to use it; and in this connection makes use of an expression which has been freely quoted in subsequent cases, and is now employed in a way which seems to me destructive of the rights of the licensee: "But the purchaser of the implement or machine for the purpose of using it in the ordinary pursuits of life stands on different ground. In using it he exercises no rights created by the act of Congress, nor does he derive title to it by virtue of the franchise or exclusive privilege granted to the patentee. . . . And when the machine passes to the hands of the purchaser" (for such use) "it is no longer within the limit of the monopoly. It passes outside of it, and is no longer under the protection of the act of Congress." The question in that case, however, concerned only the rights of an assignee of a patent which had been extended, and the point decided was that the assignee was entitled to continue to use the patent during the extended period. In this connection there can be no question of the propriety of the language quoted. It would indeed be a strange principle to hold, that a party who had bought a patented article during the original term of the patent, should be obliged to pay an additional royalty for its use, if that term were extended.

In *Mitchell* v. *Hawley*, 16 Wall. 544, the patentee assigned to another the right to make and use, and to license others to make and use, four of his machines during the original term of the patent, with the express provision that the grantee should not dispose of, sell, or license any one to use such machine *beyond* the said term. The patent was extended for seven years, and a grant to use the machines for the two States in question during the extended term was made to

another. In delivering the opinion of the court, Mr. Justice Clifford quoted liberally the general language of the prior cases, but held that the grantor, under whom the defendants claimed, never acquired the right to sell the machines, and give their purchasers the right to use them, beyond the term of the original patent; and that notice to the defendants, who had purchased their rights from the grantee of the original term, was not required, as the law imposed the risk upon the purchaser, as against the real owner, of ascertaining whether the title of the seller was such that he could make a valid conveyance. In this case, the purchaser from the original grantee of the term was held affected with knowledge of the terms of the grant from the patentee, which expressly took from the assignee the right to sell or grant any license to use the machines *beyond* the expiration of the original term. This case seems to be a limitation upon the general doctrine of the prior cases, that, by a purchase of the patentee, the patented article is thereby taken out of the monopoly. So far as the case is pertinent at all to the instant case, it favors the position taken by the court below.

There are but three cases that have any direct bearing upon the one under consideration, namely, *Adams* v. *Burke*, 17 Wall. 453; *Boesch* v. *Gräff*, 133 U. S. 697; and *Hobbie* v. *Jennison*, 149 U. S. 355. In *Adams* v. *Burke* the original patentees assigned to a firm in Cambridge, Massachusetts, all their right in the invention to a circular territory extending ten miles from the city of Boston. Defendant, an undertaker doing business at Natick, outside of this territory, bought certain coffins of the Cambridge firm, and used them in burying the dead, but sold none, except so far as the use of the coffins in his business could be considered as a sale. It was held that the defendant, having purchased the coffins of one who had a lawful right to sell them, had a right to *use* them anywhere; that the patentee, having received his consideration, the patented articles were no longer within the monopoly of the patent. The case was treated both in the opinion of the court and in the dissent, in which three Justices concurred, as a case of *use* and not of sale, and Mr. Justice Miller in delivering the

opinion observed : " Whatever, therefore, may be the rule when patentees subdivide territorially their patents, as to the exclusive right to *make* or to *sell* within a limited territory, we hold that in the class of machines or implements we have described, when they are once lawfully made and sold, there is no restriction on their *use* to be implied for the benefit of the patentee or his assignees or licensees." The dissenting Justices were of opinion that the assignment did not confer upon the assignee the right to sell the patented article to be used outside of his territory. There was no suggestion in either opinion that a purchaser from the assignee had or could have the right to deal in the patented article outside of the territory in which the purchase was made.

In *Hobbie* v. *Jennison* an assignee for the State of Michigan sold and delivered in that State certain patented gas and water pipes, knowing that they were to be laid in the streets of Hartford, Connecticut, a territory, the right for which the seller did not own under the patent. The pipes were laid in that city. It was held, following *Adams* v. *Burke*, that the seller was not liable, in an action for infringement, to the owner of the patent for Connecticut. The action in this case was brought not against the user, but against the manufacturer and vendor of the patented article, and it was held that, as the sale was completed in Michigan, neither the actual use of the pipes in Connecticut, nor the knowledge on the part of the defendants that they were intended to be used there, could make them liable. This case also involved the right to use and not to sell, and was held to be indistinguishable from *Adams* v. *Burke*. It differed from that only in the fact that the action was brought against the vendor.

The machines or implements thus referred to in these cases are such articles as are exhausted or consumed in their use; that is, where articles are of no value after a single use, there is no restriction on their further use in favor of the patentee or assignee. When a patented article of that kind, the whole value of which consists in its use for a particular purpose, and which value ceases when its capability of use for that purpose is gone, the monopoly of the patentee or his

assignee over it must necessarily cease upon its sale to the purchaser.

Upon the other hand, in *Boesch* v. *Gräff*, 133 U. S. 697, it was held that one who purchased articles covered by a patent in a foreign country, and imported them into the United States, could not sell them here without the license or consent of the owner of the American patent, although they were purchased in a foreign country from a person authorized to sell them. This is the only case decided by this court in which the right of a purchaser to *sell* patented articles outside of the territory of his vendor has been drawn in question, and I see no reason why the arguments, which moved the court in that case to hold that this could not be done, do not apply with equal cogency to a case where the patented articles are bought within the United States. In both cases a tribute has once been paid to the patentee, and the fact that that tribute was paid in a foreign country works no apparent difference in the principle.

In this connection the following decisions of the Circuit Courts, though not binding upon us as authority, are at least entitled to respectful consideration: In *Hatch* v. *Adams*, 22 Fed. Rep. 434, it was held by Judge McKennan that a purchaser of patented articles from a territorial assignee of the patent does not acquire the right to sell the articles, in the course of trade, outside of the territory granted to his vendor. A like ruling was made in the Southern District of New York by Judge Wheeler, in *Hatch* v. *Hall*, 22 Fed. Rep. 438, and 30 Fed. Rep. 613, and in the Circuit Court for the Northern District of California in the *California Electrical Works* v. *Finck*, Judge Hawley, 47 Fed. Rep. 583.

In view of the cases of *Adams* v. *Burke* and *Hobbie* v. *Jennison*, this court must be considered as committed to the doctrine that a vendee, purchasing a patented article of the patentee or his licensee, has a right to make use of the same wherever he may take it, notwithstanding the fact that the purchase be made with the knowledge of the vendor that the article is to be used in the territory of another, and with the knowledge of the vendee that the territory in which he pro-

poses to use it is owned by another. We are now asked to take another step in advance, and hold that a rival dealer, with notice of the territorial rights of a licensee or assignee, may purchase any quantity of patented articles of the patentee, and sell them in his own territory in defiance of the right of the assignee in such territory. To this proposition I am unable to give my assent.

By Rev. Stat. sec. 4898, "Every patent, or any interest therein, shall be assignable in law by an instrument in writing, and the patentee or his assigns or legal representatives may, in like manner, grant and convey an exclusive right under his patent to the whole or any specified part of the United States." The object of this statute is to vest in the licensee the exclusive right of the original patentee to make, use, and sell the invention or discovery within the territory assigned, and to take to himself the profit upon every article sold in such territory. This right is presumed to be a valuable one, and is entitled to the protection of the courts and to a reasonable construction, in so far as it does not infringe upon the rights of others, who may have purchased the patented articles of one who had a lawful right to sell them. That one who makes use of or sells a patented article in ignorance of the fact that it is patented, is liable as an infringer, is entirely well settled. (Walker on Patents, secs. 377, 569; 3 Robinson on Patents, sec. 901.) Yet we are asked to hold in this case that one, who is fully informed of the rights of a territorial assignee, may deal in the patented articles in defiance of such assignee, upon the ground that he has once submitted to the exactions of the patentee by purchasing the article of one who had a right to sell it. There is reason for saying that a person who has once paid tribute to the patentee shall not be called upon to pay tribute a second time, by reason of using the article elsewhere, but to say that he may purchase such articles for the deliberate purpose of entering into competition with a local licensee, is utterly destructive of the right of the latter to deal in the patented article. Under this rule a patentee may assign his right to make and sell the patented article in every State in the Union except his own; may there establish a manufactory, and may, by his superior

facilities, greater capital, more thorough knowledge of the business, or more extensive acquaintance, undersell his own licensees, drive them out of business, and utterly destroy the value of their licenses. In my view this cannot be done, and I am, therefore, compelled to dissent from the opinion of the court.

I am authorized to state that The Chief Justice and Mr. Justice Field concur in this dissent.