FREE SEWING MACH. CO. v. BRY-BLOCK MERCANTILE CO.

(District Court, W. D. Tennessee, W. D. April 1, 1913.)

No. 680.

1. PATENTS (§ 257*)—EXTENT OF MONOPOLY—POWER TO CONTROL SALE OF PATENTED ARTICLES.

A purchaser of a patented article of manufacture from an agent authorized to sell the same in the place of sale becomes the absolute owner with the unrestricted right to resell the same at any time and in any place, although it may be in territory exclusively assigned by the patentee to another as agent or licensee.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 257.*]

2. PATENTS (§ 257*)—EXTENT OF MONOPOLY—POWER TO CONTROL SALE OF PATENTED ARTICLES.

A patentee or his assignee who has sold the patented article, received full payment therefor, and parted with the possession thereof has received the full benefit of the "exclusive right to vend" said article given him by Rev. St. § 4884 (U. S. Comp. St. 1901, p. 3381), and has not the right to fix the price at which it may be resold by a purchaser with whom he has no contractual relations, although such purchaser may have knowledge of the attempted restriction.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 257.*]

3. PATENTS (§ 191*)—"EXCLUSIVE RIGHT TO VEND"—"SOLE LIBERTY TO VEND."

The phrases "exclusive right to vend," used in Rev. St. § 4884 (U. S. Comp. St. 1901, p. 3381), relating to patentees of inventions, and "sole liberty to vend," as used in Rev. St. § 4952 (U. S. Comp. St. 1901, p. 3406), relating to copyrights, mean substantially the same thing.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 268; Dec. Dig. § 191.*]

In Equity. Suit by the Free Sewing Machine Company against the Bry-Block Mercantile Company. On motion by complainant for preliminary injunction. Denied.

Caruthers Ewing, of Memphis, Tenn., for plaintiff.

Hirsh & Goodman, of Memphis, Tenn., for defendant.

McCALL, District Judge. This case is before me upon an application for a temporary injunction, and was heard on the bill and answer and affidavits filed by the plaintiff and defendant, tending to support their respective contentions. The bill avers and the proof shows the requisite diversity of citizenship, but no allegation is made in the bill of the amount involved, nor does it otherwise satisfactorily appear. The suit is to restrain defendant from infringing certain alleged rights of the plaintiff arising under the patent laws of the United States. Since the decision in the case of Henry v. Dick Co., 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, there seems to be no doubt of this court having jurisdiction to entertain cases of the character here un-

der consideration, irrespective of the citizenship of the parties or the amount involved. To the same effect is the recent case of The Fair v. Kohler Die & Specialty Co., 228 U. S. 22, 33 Sup. Ct. 410, 57 L. Ed. —— (opinion of United States Supreme Court March 24, 1913). At the hearing, it was admitted for present purposes that letters patent declared upon were issued to the patentees and are valid, and that the plaintiff as patentee and assignee is entitled to and does use said patents in connection with the making, use, and sale of the Free sewing machine, of which sewing machine the plaintiff is the sole and exclusive manufacturer.

It appears from the record that the policy of the plaintiff was to appoint, and it did appoint, only one dealer or agent in each city or town for the sale of the Free sewing machine, and that for some time prior to February 16, 1910, the defendant was such appointed dealer and agent at Memphis, Tenn., when, for reasons satisfactory to the plaintiff, defendant's agency terminated and another dealer or agent was, as is alleged in the bill, "licensed to advertise, exhibit, offer for sale and sell said Free sewing machine in said Memphis, said license to be exclusive to said dealer, after the defendant should have disposed of all the said Free sewing machines previously bought by the defendant" of the plaintiff. Subsequently the defendant purchased of one B. W. Barfield, an agent of the plaintiff at Brownsville, Tenn., quite a number of the Free sewing machines, through a Mr. Taylor, who was just prior to and just after said purchase a sales agent of the plaintiff, and who it appears the defendant understood was such sales agent at the time of the purchase. No contract or agreement was made in this sale and purchase tending to restrict defendant as to the manner, place, or price in the sale of the machines. The plaintiff, however, had theretofore fixed $35 as a minimum price at which the Free sewing machine should be sold at retail by those whom it licensed or appointed as its agents. This was known to the defendant, who was and is a general dealer in sewing machines in connection with its department store in Memphis. To each machine was attached the following notice:

"Patented

| Feb. 11–02 | Sep. 15–08 |
| Oct. 17–05 | Dec. 21–09 |
| July 30–07 | Jan. 10–10 |

Other patents pending.

Notice to
Jobbers and Dealers.

This machine is sold subject to conditions and restrictions as to price at which and persons by whom it may be resold ascertainable from the manufacturer upon application."

Notwithstanding this notice and knowledge on the part of the defendant, it, prior to the filing of the bill advertised, offered for sale, and sold the Free sewing machine so purchased at a cut price of $27.50 in Memphis, Tenn.

Upon the record in this case, the temporary injunction prayed for

should not in my judgment be granted unless plaintiff's right thereto is made clearly to appear under and by virtue of the patent law as declared by statute, or the construction placed thereon by the United States appellate courts. The right contended for is essentially monopolistic, and it would seem to be against public policy to extend it beyond the limits fixed by statute. Nor should the rule of construction be strained in interpreting such statute in the interest of the patentees, but they should be held to the enjoyment of only such legitimate fruits of the monopoly created by statute in their behalf as Congress clearly intended should be their reward for invention.

Keeping these general propositions in mind, the action of the court in granting or refusing the injunction must turn upon two questions, namely:

First. Whether or not one who purchases a patented article for resale (without restriction as to manner, place or price of such resale) from an authorized or licensed agent of the patentee or his assignee may offer for sale and sell said article in a different territory assigned by the patentee or assignee to another and different licensee or agent.

Second. Whether or not a patentee or his assignee may fix the price at which his patented article shall be sold to the consumer by retail dealers, with whom the patentee or his assignee has no contractual relation, after the patentee or assignee has sold said article, received full payment therefor, and parted with the possession thereof, although the retail dealer knows of the restricted price and the conditions attached to the sale of the patented article by the patentee or his assignee.

[1] It seems to me that the first question suggested is answered in the affirmative by the Supreme Court of the United States in the case of Keeler v. Standard Folding Bed Co., 157 U. S. 659, 15 Sup. Ct. 738, 39 L. Ed. 848. In that case the defendant had purchased from the territorial assignee in Michigan a quantity of the patented articles for the purpose of selling them in Massachusetts, for which state the plaintiffs were the exclusive assignees of the patentee. An injunction was obtained in the lower court against the defendant, who had purchased the patented article from the Michigan assignee, enjoining him from selling them in the Massachusetts territory. On an appeal to the Supreme Court of the United States, the decree granting the injunction was reversed. And it was there held that one who buys patented articles of manufacture from one authorized to sell them at the place where they are sold becomes possessed of an absolute property in such articles, unrestricted in time or place; and quoting with approval from the case of Hobbie v. Jennison, 149 U. S. 355, 13 Sup. Ct. 879, 37 L. Ed. 766, wherein the court held that as between the assignees of different parts of the territory, it is competent for one to sell the patented article to persons who intend with the knowledge of the vendor to take them for use into the territory of the other. In the case at bar the defendant purchased the Free sewing machines from an authorized agent of the plaintiff in the Brownsville territory, and brought them to Memphis, in the territory of another licensee of the plaintiff, and offered them for resale and resold them. Thus it appears that the facts in this case in this particular are strikingly similar to the facts

in the Standard Folding Bed Case, and in my opinion the holding in that case is decisive of the question now being considered in the instant case.

[2] The second question is a more difficult one. Neither the Circuit Court of Appeals of the Sixth Circuit nor the Supreme Court of the United States has considered it. The authorities cited and relied upon by counsel for the plaintiff from the Sixth Circuit and the Supreme Court of the United States are Button Fastener Case, 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728, Keeler v. Standard Folding Bed Co., 157 U. S. 659, 15 Sup. Ct. 738, 39 L. Ed. 848, and Bement v. National Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058, neither of which, in my judgment, is authority for plaintiff's contention, nor do they decide the question here presented. The case of Victor Talking Machine Co. v. The Fair, 123 Fed. 424, 61 C. C. A. 58, and the later case of Winchester Repeating Arms Co. v. Olmsted, 203 Fed. 493, both of which cases are from the Seventh Circuit, are relied upon by the plaintiff. While in certain material particulars the facts in those two cases differ from the facts in the case at bar, yet they tend strongly to support the plaintiff's contention. However, since each case must stand upon its particular facts, and in the absence of any decision, so far as I am advised, either by the Circuit Court of Appeals of the Sixth Circuit or the Supreme Court of the United States, wherein the facts presented on this record were involved, I feel that it is my duty to consider the question presented here as an open one in this circuit.

It has been held by the Supreme Court in the case of Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, that a patentee may, by a conditional sale, so restrict the use by his vendee within specific boundaries of time, place, or method as to make prohibited uses of the patented article outside of those boundaries constitute infringement and not mere breach of a collateral contract, that the monopoly of the patent extends to the right of making, selling, and using, and that each is a separable and substantial right. It follows, therefore, that while the patentee may, by a conditional sale, restrict the use of the patented article by his vendee, it leaves open the question as to whether or not he may restrict the price at which such vendee may sell the patented article in holding that the right of making, using, and selling are each separable and substantial rights.

In the case of Bobbs-Merrill Co. v. Straus, 210 U. S. 339, 28 Sup. Ct. 722, 52 L. Ed. 1086, it was held that the sole right to vend, granted to the holder of a copyright under section 4952 of the Revised Statutes (U. S. Comp. St. 1901, p. 3406), does not secure to the owner of the copyright the right to qualify future sales by his vendee or to limit or restrict such future sales at a specified price, and a notice in the book that a sale at a different price would be treated as an infringement is ineffective against one not bound by contract or license agreement. And, further, that there are differences between the patent and the copyright statutes in the extent of the protection granted by them, and the rights of a patentee are not necessarily to be applied by analogy to those claiming under the copyright; the court saying:

"If we were to follow the course taken in the argument, and discuss the rights of a patentee, under letters patent, and then, by analogy, apply the conclusions to copyrights, we might greatly embarrass the consideration of a case under letters patent, when one of that character shall be presented to this court. We may say in passing, disclaiming any intention to indicate our views as to what would be the rights of parties in circumstances similar to the present case under the patent laws, that there are differences between the patent and copyright statutes in the extent of the protection granted under them. This was recognized by Judge Lurton who wrote a leading case on the subject in the Federal Courts (The Button Fastener Case, 77 Fed. 288 [25 C. C. A. 267, 35 L. R. A. 728]), for he said in the subsequent case of Park & Sons v. Hartman, 153 Fed. 24 [82 C. C. A. 158, 12 L. R. A. (N. S.) 135]: 'There are such wide differences between the right of multiplying and vending copies of a production protected by the copyright statute and the rights secured to an inventor under the patent statutes that the cases which relate to the one subject are not altogether controlling as to the other.'"

A critical examination of section 4884 of the Revised Statutes (U. S. Comp. St. 1901, p. 3381), conferring rights upon the patentee, and section 4952 of the Revised Statutes (U. S. Comp. St. 1901, p. 3406), conferring rights under the copyright law, is therefore important in arriving at the difference between the rights conferred under the patent and under the copyright statutes referred to by Mr. Justice Lurton.

Section 4884, granting franchises under the patent law, reads as follows:

"Every patent shall contain * * * a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use and vend the invention or discovery. * * *"

Section 4952 of the Revised Statutes, granting franchises under the copyright law, reads as follows:

"Any citizen * * * who shall be the author, inventor, designer or proprietor of any book, map, chart, dramatic or musical composition * * * and the executors, administrators or assigns of any such person, shall * * * have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing and vending the same."

This last clause may be stated, without in my judgment affecting its meaning, in this wise: That the holder of a copyright shall have the exclusive right to make and vend the work so copyrighted. Under the first section quoted, the patentee has the *exclusive right of vending* the invention or discovery. Under the second section quoted the owner of the copyright has the *sole liberty of vending* his copyright work. So that the essential difference seems to me to be that the word "use" appears in section 4884, relating to patents, and is omitted from section 4952, relating to copyrights. The patentee under said section 4884 has the *exclusive right to vend* his invention or discovery, and the owner of the copyright, under section 4952, has the *sole liberty to vend* the work copyrighted. Now, if the owner of the copyright is not guaranteed the right by the words, "sole liberty to vend," in section 4952, to qualify future sales by his vendee, or to limit or restrict such future sales at a specified price by a notice in the copyrighted book that a sale at a different price would be treated as

an infringement, and such notice is ineffectual against one not bound by contract or license agreement, as is held in Bobbs-Merrill Co. v. Straus, it would seem to follow that a patentee or his assignee who has sold the patented article received full payment theref and parted with the possession thereof is not granted the right by the words "exclusive right to vend" in section 4884 to limit or restrict future sales of his patented article to a specified price by those who have purchased such articles from the authorized agents of the patentee or his assignee, and who have entered into no contract or license agreement with the patentee or his assignee or his agent to sell such articles at the price fixed by him.

[3] After a careful examination of the meaning of the words, "exclusive," "right," "sole," and "liberty," as defined in Webster's New International Dictionary, I conclude that, if there is a difference in the meaning of the phrases "exclusive right to vend," and "sole liberty to vend," it is so subtle that my mind fails to grasp it, and my pen fails to define it. In my opinion, therefore, it cannot be seriously argued that there is any material difference in the meaning of the two phrases, as used in the patent and the copyright statutes. If these two phrases mean substantially the same thing, as I hold they do, and the right is not conferred under the copyright statute upon the owner of the copyright to restrict the price of the copyrighted article in the hands of his vendee, to whom he has sold and parted with the possession of the article copyrighted, then it is difficult to comprehend how the right given to the patentee under the phrase, "exclusive right to vend," could be held to confer the right upon the patentee to restrict the price of the patented article in the hands of the defendant, except it be by contract or agreement, of which there was neither in this case. At any rate, in the exercise of what I am pleased to term a sound discretion, I am constrained to decline the application for an injunction pending the preparation and trial of the case upon its merits.

An order to that effect will be entered, and dissolving the restraining order heretofore granted.