## WESTINGHOUSE ELECTRIC & MFG. CO. v. HESSER.

### No. 9116.

Circuit Court of Appeals, Sixth Circuit.

Nov. 30, 1942.

Drury W. Cooper, of New York City (Drury W. Cooper and Victor S. Beam, both of New York City, A. B. Reavis, of Lester, Pa., and Wm. Marshall Bullitt and Bruce & Bullitt, all of Louisville, Ky., on the brief), for appellant.

Arthur F. Robert, of Louisville, Ky., for appellee.

Before SIMONS, ALLEN and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant sued for contributory patent infringement, but its petition was dismissed on the ground that the accused sales by the appellee were for purposes of replacement or repair of the patented structures and so did not constitute infringement under the rule of Wilson v. Simpson, 9 How. 109, 13 L.Ed. 66; Keeler v. Standard Folding-Bed Co., 157 U.S. 659, 15 S.Ct. 738, 39 L.Ed. 848; Automotive Parts Co. v. Wisconsin Axle Co., 6 Cir., 81 F.2d 125. No issue of validity is involved and our problem is simply to determine whether the sales were of such nature, either in the character or quantity of the elements furnished, as to constitute a contribution to reconstruction of the patented combination.

The patent in suit is Foresman No. 1,683,341, granted September 4, 1928, for an automatic progressive-feed stoker. While the patent is designated as for a stoker, it is the appellant's contention that the claims in suit, Nos. 1 and 6, printed in the margin,[1] are restricted to a grate assembly

---

[1] 1. In a progressive feed stoker, a series of grate members pivotally connected together in end-to-end relation and extending in the direction of fuel feed, a stationary pivotal connection for the first member of the series considered in the direction of fuel feed, a stationary support for the last member of the series considered in the direction of fuel feed, said last member being slidable on said stationary support, and means for oscillating said first member about its stationary pivotal connection.

6. In a stoker, the combination with a retort having a fuel feeding ram, of an articulated grate section pivotally supported adjacent the side of the retort, means for raising and lowering an intermediate portion of the section at one of its points of articulation and a stationary support for the section at its portion most remote from the retort, said portion being adapted to slide on said stationary support, said stationary support being hollowed out in cross section so as to impart an oscillatory motion to the portion sliding thereover.

which the defendant contributorily infringed by furnishing stoker owners such quantity of elements as would permit reconstruction. This the defendant denies and contends that the parts furnished do not dominate the patented combination under the rule applied by us in the Wisconsin Axle Company case, supra, and that they were supplied solely for repair or replacement purposes and for stock-on-hand, for such purposes.

The patent discloses a stoker wherein the feeding of the fuel is automatic from a retort at the center out and over grate bars at the sides of the combustion chamber, the bars being combined into grate sections articulated for movement and sloping downward from the central retort. The grate sections are narrow segments of bars joined together in end-to-end relation by pins, so that each series composes a unit which is disposed of in the main assembly in close parallel relation to other units. Together they form the fuel support or bed, and by their undulatory movement induced by power applied to the first bar, cause feeding of the fuel from the retort, across the combustion zone, and out to the dump grates. The agitation of the grate sections is achieved by pivoting them to the sides of the retort at their upper edges by means of a slot and cylinder connection and a slidable connection at the lower end of the grate section upon a stationary support. Means are provided for oscillating the first grate member about its stationary pivotal connection, and consists of lugs which permit power, transmitted from an appropriate source through a shaft, to rock the grate bar assembly.

It will be observed that claims 1 and 6 include at least six elements: (a) a first grate member; (b) a last grate member; (c) a pivot pin pivotally connecting the first and last grate members; (d) a stationary pivotal connection; (e) a stationary support; and (f) means for oscillating the first grate member. It is conceded by the appellant that prior to the invention covered by the patent, under-feed stokers of the general type disclosed therein were old and well-known. They included those with retorts extending from front to rear of the furnace, with downwardly-inclined grates extending from the sides of the retort to suitable ash pits. The problem solved by the patent in suit is alleged to be the provision of the special and unique grate construction described, capable of agitating the fuel bed, securing better permeation of the latter by air, and positively feeding the fuel from the retort toward the ash pit. The dominant or primary thing contributed to the inventive concept was, therefore, it is said, not the stoker as a whole but only the grate surface therein which constituted a new type of grate construction, namely, a "link grate," comprising bars pivotally connected in end-to-end relation, with the initial bar or bars pivoted at one or both sides of the retort and the final bar or bars slidable on a stationary foundation, together with any suitable means to cause the bars to undergo undulatory motion.

The structure of each link grate bar of the series is said to be special in order to fulfill the requirements of the problem. Nevertheless it is conceded that none of the elements are, in themselves, patented or patentable. The invention is for the combination. It is likewise conceded in the agreed statement of facts, that the defendant has not manufactured any complete stoker, and there is no proof that he has ever manufactured or sold any completely assembled grate bar sections. It is also agreed that the parts comprising the grate assembly that come into direct contact with the fuel bed, burn out and need replacement from time to time during the useful life of the stoker, that all stoker users normally expect to repair, and do repair, by replacement, such burned out parts, that some users maintain a stock-on-hand for replacement or repair purposes, and that when an element forming an integral part of the structure becomes unfit for use, it is thrown away and no attempt is made to save any portion thereof.

The accused sales made by the defendant are those to the Jefferson County Jail, the Dixie Highway Distillery of Frankfort, University of Louisville, Bradford Mills, Inc., and the Glencoe Distillery Company. All of these purchasers of parts from the defendant are owners of Westinghouse stokers bought from the appellant, and all are located in or near Louisville, Kentucky. Of the alleged infringing sales only those made to the Jefferson County Jail need be considered for present purposes, for it is only to this user that the defendant sold parts capable of being combined into the complete assembly called for by the claims. The other sales, while not of full complements of grate bars, are said to include bars and other elements for replacement sufficient in quantity to form

complete single rows, or when used for replacement purposes sufficient in number to predominate over those remaining, so as, in effect, to constitute a reconstruction of such units. It follows, therefore, that if there is no contributory infringement in the sales to the Jefferson County Jail there is no infringement anywhere.

The District Court, basing its decision upon the principle announced in the cases heretofore cited, to the effect that the purchaser of a patented device has the legal right to use it and if, during its use, some part which is not itself patented, wears out or becomes broken though the structure does not thereby lose its efficiency or usability in its entirety, the owner may replace or repair the worn out or broken part provided such repair or replacement is not so extensive in nature as to amount to reconstruction of the patented combination, concluded that since the full complement of grate bars and grate link lock bearings manufactured and sold by the defendant to the Jefferson County Jail was not installed as a whole, nor intended to be sold or used for reconstruction purposes, there was no infringement. It reasoned that if a replacement part can be sold separately without infringing the patent, innumerable repetitions of such individual transactions would not, under like circumstances, constitute infringement. Likewise, if the articles are purchased in bulk for stock-on-hand purposes, and are used at successive intervals as replacement requirements call for such use, there is also no infringement, relying upon Standard Stoker Co. v. Berkley Mach. Works & Fdy. Co., 4 Cir., 106 F.2d 475.

■ Were it not for the contention that the record furnishes no proof that the sales to the Jefferson County Jail were for stock-on-hand purposes, to be used for replacement and repair, and not for reconstruction, and for the contention here made that our decision in the Wisconsin Axle case places the burden of proof upon the defendant once there is evidence that parts were sold in quantity sufficient to assemble a full complement, we might well rest decision upon the findings of fact and conclusions of law pronounced by the District Judge. In the Wisconsin Axle case, supra, however, we recognized the general rule to be that the burden of proof rests upon the plaintiff to show patent infringement. Pointing to the difficulties that are sometimes encountered in arriving at a correct conclusion and seeking to apply the rule established in Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 503, 53 L.Ed. 816, and our own case of Foglesong Machine Co. v. J. D. Randall Co., 6 Cir., 239 F. 893, we concluded that every case must be decided on its special facts and circumstances, that the difficulties do not arise from any vagueness or uncertainty in the rule, but from the necessity of determining which of two classes of parts dominates the structure as a whole. We were then confronted with the fact that in making determination we had no evidence of specific replacements and nothing to show the condition of the original parts of the axles there involved in which replacements were made or how many of the parts the appellant ever sold for use in a single axle. In view of the nature of the patented structure and the difficulties to be confronted by the plaintiff in ascertaining the facts required for determination, we placed the burden of disclosing such facts upon the defendant and gave it the opportunity to show that the sales were rightfully made. This it did, upon retrial. Timken-Detroit Axle Co. v. Automotive Parts Co. 6 Cir., 93 F.2d 76.

■ The present case presents no such difficulties as there confronted the plaintiff. The sales complained of were all made to institutions in the Louisville vicinity. They were few in number and the plaintiff had equal opportunity with the defendant to ascertain whether the parts purchased were used for reconstruction or repair within the doctrine of the cited cases. Moreover, the nature of the patented structure in the Wisconsin Axle case was such that even with a complete record of sales of the patented device, it meant investigating vehicles in the thousands, or tens of thousands, scattered over the highways of the country, to ascertain whether any, or if any, how many, axles had been reconstructed. It was a difficulty almost insurmountable, especially in view of the fact that vehicles of the class there involved frequently are transferred from one owner to another. Here we have but a few users of a patented device permanently and fixedly installed, conveniently reached, and the facts in respect to them reasonably capable of ascertainment. The principle which permits a court of equity to place the burden of disclosure upon the defendant does not here apply.

■■ Nor was the court unwarranted in drawing an inference from established and

410

agreed facts, that the grate bars and grate lock bearings manufactured and sold by the defendant to the Jefferson County Jail were not installed as a whole nor intended to be sold and used for other than replacement or repair purposes, nor in concluding that the purchaser desired to have such parts available as stock-on-hand to use as repair requirements called for them. The Jefferson County Jail was neither a dealer nor an assembler of under-feed stokers. It had purchased two from the appellant It had been advised by it that various elements of its patented combination are subject to destruction in use, and had been furnished by Westinghouse with a suggested list of renewable parts—numerous in some categories, limited in others. The appellant agrees that all stoker users normally expect to repair, and do so by replacing the burned out parts of the grate structure which are designedly contrived so as to be readily replaced. It also agrees that some users maintain a stock-on-hand of such parts for replacement or repair purposes. The Jefferson County Jail having installed two Westinghouse stokers, it was not unreasonable to assume that the jail authorities, in view of well-understood problems of discipline and control, would exercise reasonable caution or even an excess of it in providing replacement parts to guard against possible breakdown in heating apparatus, and there is no inference reasonably to be drawn, in the absence of other proof, that its purchases were for reconstruction and not for stock-on-hand for purpose of repair. Where the perishable nature of the parts are recognized by the patentee, and where the parts are adapted to be removed from the patented combination and, from time to time, replaced, replacement of such parts is repair and not reconstruction. Foglesong Machine Co. v. J. D. Randall Co., supra; Wagner Typewriter Co. et al. v. F. S. Webster Co., C.C.S.D.N.Y., 144 F. 405; General Motors Corp. v. Preferred Elec. & Wire Corp., 2 Cir., 79 F.2d 621.

The grate bars and grate link connections being so numerously duplicated in the patented combination and all of them being subject to destruction in use, it would be a fruitless task to determine when, in the replacement of useless parts in a given stoker, the new would dominate the old. It might well be that some of the replaced units would themselves need replacing long before other original units failed. The inventive concept of the patent here consid-

ered lies so peculiarly in the combination and not in mere multiplication of identical elements, that considerations of quantities, relative weights, and costs, are of little aid on the question of domination. We are of the view that the manufacture and sale by the appellee of parts to the Jefferson County Jail did not constitute contributory infringement, in absence of proof of direct infringement. This being so it becomes unnecessary to consider the more limited sales by the appellee, nor to explore the interesting question as to what is included in the element of claims 1 and 6 described as "means for oscillating the first grate member."

The decree below is affirmed.