# HOBBIE *v.* JENNISON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 270. Submitted April 27, 1893.—Decided May 10, 1893.

An assignee for Michigan, of a patent for an improvement in pipes, made, sold and delivered in Michigan, pipes made according to the patent, knowing that they were to be laid in the streets of a city in Connecticut, a territory the right for which the seller did not own under the patent, and they were laid in that city: 'Held, under *Adams* v. *Burke,* 17 Wall. 453, that the seller was not liable, in an action for infringement, to the owner of the patent for Connecticut.

THIS was an action at law, brought in the Circuit Court of the United States for the Eastern District of Michigan, in August, 1886, by Isaac S. Hobbie and John A. Hobbie. The original defendants were Charles E. Jennison and Isaac H. Hill. The defendant Hill appeared and then withdrew his appearance, and the suit was discontinued as to him and proceeded as against Jennison. The action was brought for the infringement of letters patent of the United States, No. 45,201, granted to Arcalous Wyckoff, November 22, 1864, for an improvement in pipes for gas, water, etc., for seventeen years from that day. The plaintiffs had become, from May 31, 1876, the owners of the patent for the States of Maine, New Hampshire, Vermont, Rhode Island, Massachusetts, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, and West Virginia, and the District of Columbia. The declaration alleged that Jennison, on June 12, 1880, and on divers days between that day and November

22, 1881, at Hartford, Connecticut, and elsewhere in the plaintiffs' territory, and without their license or consent, made and used, and vended to others to be used, the patented invention, and within those dates did ship from Bay City, Michigan, to the Hartford Steam Company, of Hartford, Connecticut, large quantities of wooden pipe embodying the patented invention, with intent that the same should be laid and used at Hartford, and thus infringed the right of the plaintiffs under the patent, to their damage $5000.

The defendant joined issue, a trial by jury was duly waived, and the case was tried before Judge Brown, the District Judge, now a member of this court. He found in favor of the defendant, and a judgment in his favor for costs was entered. The opinion of Judge Brown is reported in 40 Fed. Rep. 887. The Circuit Court found the following facts:

"1. That, during all the times hereinafter mentioned, the plaintiffs in the action were assignees and owners of letters patent No. 45,201, dated November 22, 1864, granted to Arcalous Wyckoff for an improved pipe for gas, water, etc., for New York, New England, and all the Eastern States north of the Carolinas, and carried on business as manufacturers of the patented pipe at Tonawanda, in the State of New York, with sufficient facilities to supply the market in all the territory owned by them, and that, at the time of the sale of the pipe or casings hereinafter mentioned, defendant's firm was aware of the plaintiffs' title to said patent for the State of Connecticut.

"2. That the firm of Ayrault, Jennison & Co., which was composed of the defendant, Susan Hill, and one Miles Ayrault, was the assignee and owner of the same patent for the State of Michigan, and, during the greater part of the year 1880, manufactured and sold the patented pipe at Bay City, in the State of Michigan, to various persons.

"3. That, in the year 1880, the firm of Andrew Harvey & Son did business in Detroit, Michigan, as machinists and manufacturers of valve fittings and other supplies.

"4. That, in the fore part of 1880, the Hartford Steam Co., a corporation organized, existing, and doing business under the

laws of the State of Connecticut, at Hartford, in said State, undertook the project of laying down lines of steam-pipe apparatus for heating purposes in the streets of said Hartford, and that they had considerable correspondence with said Harvey & Son as to the best prices they could get for pipe casings and iron pipes, and also as to the best terms for freight from Bay City, Michigan, and elsewhere to Hartford, Connecticut; that, on the 5th day of May, 1880, said Hartford Steam Co., which had been negotiating for several weeks with Harvey & Son concerning the said project, completed a contract with them to lay down in Hartford the said steam-supply apparatus.

"5. That said Harvey & Son entered upon the performance of said job at Hartford as the agent and under the directions of the said Hartford Company; that they were also employed and acted as the agent of said Hartford Steam Supply Company in obtaining for them the best prices they could in the purchase of iron and wooden pipes, and in obtaining the best rates they could for freight from Michigan or elsewhere, and in obtaining rebates in freight when necessary; and that said steam company relied upon their judgment in said matters; and that, in all their negotiations and dealings with Ayrault, Jennison & Co., they acted on behalf of, and as the agents merely of, said Hartford Steam Co.

"6. That after said Hartford Co. had perfected said contract with said Harvey & Son, they sent various written orders, during the year 1880, by mail, to the address of said defendant at Bay City, Michigan, to ship to them at Hartford, Connecticut, certain quantities of wooden piping; that said defendants accepted the same and manufactured said piping at their factory under said patents and in conformity with the description and covered by the claim of said Wyckoff patent, and sold and delivered the same to the said Hartford Co. on board the cars at Bay City, Michigan, addressed to them, and that they had nothing to do with said piping after the delivery of the same on the cars at Bay City; that said Hartford Co. paid the freight thereon from Bay City to Hartford and sent drafts for the payment of said piping to defendants at Bay

City ; that none of the wooden pipes used in the laying of said steam-supply apparatus at Hartford were sold to said Harvey & Son, but were all sold to said Hartford Steam Co., and that any orders made by Harvey & Son were made merely as the agents of the Hartford Steam Co.

" 7. That said piping so purchased was laid down in Hartford during the term of said patent, and that during the negotiations connected with the sales and shipment of said pipe or casing defendant's firm knew that it was for use in the construction of steam-heating works in the city of Hartford, State of Connecticut, and that said Harvey & Son were to lay said pipe in Hartford.

" 8. That the accounts for said sales to said Hartford Co. were kept on the books of said Ayrault, Jennison & Co. in the name of the Hartford Steam Co., and that a statement of the entire account from their books of said sales was sent to them at the close of the year.

"9. That said pipe or casing was laid down as a part of said works during the life of said patent, in the summer and fall of 1880, under said Harvey's directions, in the streets of Hartford.

" 10. That by the acts and doings of defendant's firm in the premises, as above stated, the plaintiffs sustained damage, and if any recovery were permissible under the rules of law, they would be entitled to an inquiry to ascertain the amount of such damage, based on the testimony introduced by said plaintiffs."

As a conclusion of law from the foregoing facts, the court found that the plaintiffs were not entitled to recover in the action. The plaintiffs excepted to the conclusion of law and to the judgment, and brought a writ of error.

*Mr. James A. Allen* for plaintiffs in error.

The hindrance to carrying out the views of the court below on the merits of the case, was found in the authority of *Adams v. Burke,* 17 Wall. 453. The plaintiffs in error seek on this appeal a review of the application which has been made of

*Adams* v. *Burke*, to this case, rather than of the essential doctrine of that case. The contention of the dissenting members of this court in that cause was that use of a patented article lawfully purchased of an assignee of specific territory could only be had within such territory and in no case beyond or outside it within the United States, and that, as to use of the thing patented, the purchaser only acquired the right to such use within the territory held by the seller. A case may possibly arise in which this court will be called on to revise or modify the ruling of the majority of this court in deciding against this contention; but it is our view that the present case does not involve it. In *Adams* v. *Burke*, it is assumed that the patented coffin-lids were first lawfully sold to the purchaser without condition or restriction by assignees of the patent for the territory of Boston and vicinity; and then the question is presented whether, as an incident of such a lawful sale, the buyer could use outside the limits of the title of the assignor the article so lawfully and rightfully purchased. The case was heard *on bill and plea,* and the plea, which was accepted as true, and which was entitled to be liberally construed in favor of the pleader, expressly stated that the coffins containing the invention were manufactured by Lockhart & Seelye within a circle whose radius was ten miles; having the city of Boston as its centre, and sold within said circle by said Lockhart & Seelye without condition or restriction. The validity of the sale by Lockhart & Seelye was in that case assumed throughout, and no contest made upon it; only the effect and incidents of such a lawful sale were disputed and considered. There was no showing that the sellers sold the patented coffin-lids *for use in other territory,* or that they knew of or had in view any such use. In both stages of this case, in all references made to it, the lawfulness of the sale by Lockhart & Seelye to Burke was conceded and the dispute was whether or not, the sale and purchase being valid and lawful, as an incident thereof the purchaser might use the goods in other territory. In the present case the lawfulness, as against the plaintiffs in error, of the alleged sale of the patented pipe by Ayrault, Jennison & Company in the actual

circumstances of such sale, is exactly what is contested; the claim of the plaintiffs being that such sale and the shipments thereunder *expressly for use within the territory of the plaintiffs*, constituted an invasion upon the rights of the plaintiffs and as against them were unlawful. Actual sale, delivery and acceptance of the pipe at Bay City for general use, would be one thing; a form of delivery at Bay City with acceptance at Hartford, and knowledge and intent on the part of the seller that the sole use would be at Hartford, and shipments on that basis and understanding as against the plaintiffs, in our view would not constitute a lawful sale of the pipe at Bay City. The transaction would be treated in the light of its purpose and effect as a raid or invasion on the plaintiffs' territory and an attempt to displace and intrude upon his rightful market. If the defendants sought protection in such a transaction through a mere arrangement that delivery should be on cars at Bay City, the shield would be unavailing. The law would stamp the transaction with its real attributes and deem it unlawful.

The general current of decisions in the Circuit Courts has shown no inclination to extend the doctrine of *Adams* v. *Burke*, by loose or liberal interpretations. In those courts it has been repeatedly ruled that a sale in the territory of one assignee for the purpose of selling again to users in the territory of another assignee was unlawful. *California Electrical Works* v. *Finck*, 47 Fed. Rep. 583; *Standard Folding Bed Co.* v. *Keeler*, 37 Fed. Rep. 693; *Hatch* v. *Adams*, 22 Fed. Rep. 434; *Hatch* v. *Hall*, 30 Fed. Rep. 613.

*Mr. George H. Lothrop* for defendant in error.

MR. JUSTICE BLATCHFORD, after stating the case, delivered the opinion of the court.

As a result of the findings of fact, the Circuit Court held that the sale and delivery of the pipe by the defendant were made at Bay City, Michigan, but that, in view of the decision of this court in *Adams* v. *Burke*, 17 Wall. 453, the defendant

could not be held as an infringer by reason of his knowledge that the pipe was to be used in a territory of which the plaintiffs held the monopoly. The Circuit Court said that, in the case of *Adams* v. *Burke,* an undertaker had purchased patented coffin-lids from certain manufacturers who held the right from the patentee to manufacture and sell within a circle whose radius was ten miles, having the city of Boston as a centre; that the undertaker lived outside of that circle, and within a territory owned by the plaintiff under the patent, and he made use of the coffin-lids in his business; that the owner of the territory in which the undertaker carried on his business brought suit against him as an infringer, and it was held by this court that, the sale having been made by a person who had full right to make, sell, and use the invention within his own territory, such sale carried with it 'the title to the use of the machine without as well as within such territory; that the action in that case was brought against the user, but this court announced a principle of law which was equally applicable to the seller; that if the user of the article was not liable to the patentee, it was because he purchased it of a person who had the legal right to sell it; that if it was legal for him to buy, it was equally legal for the other party to sell; and that, in the opinion of this court, in the case, as well as in the dissenting opinion, it was stated, in substance, that the question raised was whether an assignment of a patented invention for a limited district conferred upon the assignee the right to sell such patented article to be used outside of such limited district. The Circuit Court further said that there was no evidence in *Adams* v. *Burke* that the sale was made under the belief on the part of the seller that the article was to be used within his territory, and that the case was authority for the broad proposition, that the sale of a patented article by an assignee within his territory carries the right to use it everywhere, notwithstanding the knowledge of both parties that a use outside of the territory is intended.

We understand that to be the true interpretation of the decision in *Adams* v. *Burke.* It is said in the opinion in that case, that when the patentee, or the person having his rights,

sells a machine or instrument whose sole value is in its use, he receives the consideration for its use and parts with the right to restrict that use; that the patentee, or his assignee, having in the act of sale received all the royalty or consideration which he claims for the use of his invention in that particular machine or instrument, it is open to the use of the purchaser without further restriction on account of the monopoly of the patentee; that, although the right of the assignees of the coffin-lid patent to manufacture, to sell, and to use the coffin-lids was limited to the circle of ten miles around Boston, a purchaser from them of a single coffin acquired the right to use that coffin for the purpose for which all coffins are used; that, so far as the use of it was concerned, the patentee had received his consideration, and it was no longer within the monopoly of the patent; that it would be to engraft a limitation upon the right of use, not contemplated by the statute nor within the reason of the contract, to say that it could only be used within the ten-mile circle; and that, whatever might be the rule when patentees subdivided territorially their patents, as to the exclusive right to *make* or to *sell* within a limited territory, this court held that, in the class of machines or implements it had described, when they were once lawfully made and sold, there was no restriction on their *use* to be implied, for the benefit of the patentee or his assignees or licensees.

The plaintiffs in error contend that the decision in *Adams* v. *Burke* is not applicable to the present case; that in *Adams* v. *Burke* it was assumed that the patented coffin-lids were first lawfully sold to the purchaser, without condition or restriction, by assignees of the patent for the territory of Boston and vicinity; that then the question was presented whether, as an incident of such a lawful sale, the buyer could use outside of the limits of the territory of the assignees the article so lawfully purchased; that it was not shown in that case that the sellers sold the patented coffin-lids for use in other territory, or knew of, or had any interest in such use; that, in the case now before us, the lawfulness, as against the plaintiffs, of the alleged sale of the patented pipe by the defendant, in the actual circumstances of such sale, was contested, the claim of the plain-

tiffs being that such sale and the shipment thereunder, expressly for use within the territory of the plaintiffs, constituted an invasion of their rights and were unlawful as against the plaintiffs; and that actual sale, delivery, and acceptance of the pipe at Bay City for actual use would be one thing, but a form of delivery at Bay City, with an acceptance at Hartford, and knowledge and intention on the part of the defendant that the sole use would be at Hartford, and shipments on that basis and understanding, would not constitute a lawful sale of the pipe at Bay City, as against the plaintiffs.

But we are of opinion that the case of *Adams* v. *Burke* cannot be so limited; that the sale was a complete one at Bay City; and that neither the actual use of the pipes in Connecticut, or a knowledge on the part of the defendant that they were intended to be used there, can make him liable. *Adams* v. *Burke*, in the particular in question, is cited with approval by this court in *Birdsell* v. *Shaliol*, 112 U. S. 485, 487; *Wade* v. *Metcalf*, 129 U. S. 202, 205; and *Boesch* v. *Gräff*, 133 U. S. 697, 703.

The authorities which are cited on the part of the plaintiffs, holding that where a person makes one element of a patented combination, with the intent that other persons shall supply the other elements and thus complete the combination, he is guilty of infringement because he contributes to it, establish a doctrine applicable to the case of a naked infringer. But in the present case, the defendant was not such an infringer, because he had a right under the patent to make, use, and vend the patented article in the State of Michigan, and the article was lawfully made and sold there. The pipes in question were not sold by the Hartford Steam Company in Connecticut, but were merely used there, and necessarily perished in the using.

It is easy for a patentee to protect himself and his assignees, when he conveys exclusive rights under the patent for particular territory. He can take care to bind every licensee or assignee, if he gives him the right to sell articles made under the patent, by imposing conditions which will prevent any other licensee or assignee from being interfered with. There

is no condition or restriction in the present case in the title of the defendant. He was the assignee and owner of the patent for the State of Michigan.

*Judgment affirmed.*