**DECKER et al. v. FEDERAL TRADE COMMISSION.**

No. 9625.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 14, 1948.

Decided June 6, 1949.
Writ of Certiorari Denied Nov. 14, 1949.
See 70 S.Ct. 159.

462

STEPHENS, Chief Judge, dissenting.

———◆———

Mr. Harry S. Hall, Washington, D. C., with whom Mr. Josephus C. Trimble, Washington, D. C., was on the brief, for petitioners.

Mr. Donovan R. Divet, Special Attorney, Federal Trade Commission, Washington, D. C., with whom Messrs. William T. Kelley, General Counsel, Walter B. Wooden, Associate General Counsel and James W. Cassedy, Assistant General Counsel, Federal Trade Commission, Washington, D. C., were on the brief, for respondent.

Before STEPHENS, Chief Judge, and WILBUR K. MILLER and PROCTOR, Circuit Judges.

PROCTOR, Circuit Judge.

This case is here for review of a proceeding before the Federal Trade Commission, resulting in a cease and desist order against petitioners, who were charged with unfair and deceptive acts and practices in commerce, in violation of Section 45 of Title 15 United States Code, annotated.

Petitioners hold a patent to a device bearing the trade name Vacudex, which they were selling in interstate commerce. In their advertising they represented that Vacudex, when attached to the exhaust mechanism of automobiles, saved gasoline and oil; increased the power of the motor; caused it to give better performance; drew carbon, oil and moisture from the muffler; eliminated or reduced back pressure; reduced vibration of the motor; gave the motor greater acceleration; caused the motor to run more smoothly, and saved tires. These representations, with others, formed the basis of the detailed charges against petitioners in the complaint before the Commission, and are similar to those proscribed by the order to cease and desist. They are also substantially like statements included in the patent application, a copy of which was carried into the letters-patent. Petitioners here renew the several contentions made before the Commission.

The jurisdiction of the Commission is attacked upon the broad ground that the proceedings were, in effect, an attack upon the patent itself, only tenable in appropriate proceedings before a federal district court. Title 28 United States Code Annotated, Section 41 [now § 1331 et seq.]. Their contention is that the peculiar facts of this case exclude it from the Commission's powers. They point out that representations in their advertising of the beneficial effects of Vacudex, charged as unfair and deceptive in the complaint, are similar in nature to representations in the letters-patent. Hence, they say that their advertising came within the "scope of the patent." From this premise they argue that issuance of the patent imported findings by the Patent Office that the invention possessed the useful advantages stated in the application. Therefore they contend that the effect of the proceedings before the Commission is to challenge the utility of the invention and thus the validity of the patent. This, they insist, is beyond the lawful powers of the Commission. We cannot agree with these contentions. They are predicated upon a misconception of the nature and extent of the patent grant, as we shall point out.

In speaking of their advertising as within the "scope of the patent," petitioners mean, as we understand, that the advertising of the useful benefits of Vacudex stems from statements contained in the patent application which were carried into the letters-patent. But, they are mistaken in assuming that this circumstance brings the advertising within the scope of the patent. In legal contemplation the scope of a patent is limited to the invention described in the claims of the patent, read in

the light of the specification. Motion Picture Patents Co. v. Universal Film Manufacturing Co., 1917, 243 U.S. 502, 510, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959. While the claim may be illustrated it cannot be enlarged by language used in other parts of the letters-patent than the claim itself. Yale Lock Manufacturing Co. v. Greenleaf, 1886, 117 U.S. 554, 559, 6 S.Ct. 846, 29 L.Ed. 952. Otherwise stated, the scope of letters-patent is limited to the invention covered by the claim, and though the claim may be illustrated, it cannot be enlarged by the language of the specification. Railroad Co. v. Mellon, 1881, 104 U.S. 112, 118, 26 L.Ed. 639; McClain v. Ortmayer, 1891, 141 U.S. 419, 424, 12 S.Ct. 76, 35 L.Ed. 800.

■■ A claim, in the patent law, has a technical meaning, derived from the statutory provision that a patent applicant "shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. * * *" Title 35 United States Code Annotated, Section 33. It seems clear, therefore, that the scope of a patent is limited to the device particularly pointed out in the specification and distinctly claimed by the applicant, as set forth in the letters-patent. The device, made in accordance with the specification and claims, visually illustrates the scope of a patent. So we conclude that the patent covered the device alone. It cannot be understood to embrace the methods employed in advertising or selling the patented product.

■ It has long been settled that a patentee receives nothing from the law he did not have before, and that the only effect of his patent is to restrain others from manufacturing, using or selling that which he has invented. Motion Picture Patents Co. v. Universal Film Manufacturing Co., supra, and cases cited. Before the patent grant the inventor had the right to sell the product of his invention, and to advertise the same, but not the right to misrepresent it. Now, after the patent grant, petitioners, the present owners of the patent, have the right to sell the article and to advertise it, but not the right to misrepresent it. In short, the letters-patent do not cover advertising. The proceedings before the Federal Trade Commission related only to advertising. They did not draw into question the validity of the patent grant. Hence the case is not one arising under the patent laws, cognizable only in a federal district court.

■ We think petitioners also make a mistake in assuming that their patent covers the functions of the invention as set forth in the letters-patent. The law is settled that the patent does not cover functions, i. e., the operative effects or results of a patented process or device. Westinghouse v. Boyden Power Brake Co., 1898, 170 U.S. 537, 556, 557, 18 S.Ct. 707, 42 L.Ed. 1136; General Electric Co. v. Wabash Appliance Corp., 1938, 304 U.S. 364, 371, 58 S.Ct. 899, 82 L.Ed. 1402. Indeed a patent claim stated solely in terms of function is void, Expanded Metal Co. v. Bradford, 1909, 214 U.S. 366, 384, 29 S.Ct. 652, 53 L.Ed. 1034, for the obvious reason that if functions or results are patentable the patent monopoly would be extended beyond the discovery and discourage rather than promote invention. The Incandescent Lamp Patent, 1895, 159 U.S. 465, 476, 16 S.Ct. 75, 40 L.Ed. 221; Holland Furniture Co. v. Perkins Glue Co., 1928, 277 U.S. 245, 257, 48 S.Ct. 474, 72 L.Ed. 868.

■ Applying the foregoing rule to the facts of this case, we observe that the complaint before the Commission and the order to cease and desist relate only to statements concerning the functioning of Vacudex. It follows that such representations, which in one form or another found their way into the advertising of petitioners, do not come within the limited coverage of the patent grant. Rather do they fall under the prohibitions of general law, applicable to all who put their products for sale into the channels of commerce and trade. When they do so they can claim no immunity by reason of a patent. It cannot be made a cover for violation of law. Standard Sanitary Mfg. Co. v. U. S., 1912, 226 U.S. 20, 49, 33 S.Ct. 9, 57 L.Ed. 107; Virtue v. Creamery Package Co., 1913, 227 U.S. 8, 32, 33 S.Ct. 202, 57 L.Ed. 393. "Beyond the limited monopoly

which is granted, the arrangements by which the patent is utilized are subject to the general law." U. S. v. Masonite Corporation, 1942, 316 U.S. 265, 277, 62 S.Ct. 1070, 1076, 86 L.Ed. 1461. Nor does the grant "limit the right of Congress to enact legislation not interfering with the legitimate rights secured by the patent." United Shoe Machinery Corp. v. U. S., 1922, 258 U.S. 451, 464, 42 S.Ct. 363, 367, 66 L.Ed. 708. Likewise, patent rights are subject to the prohibitions and controls imposed by the states in the legitimate exercise of their powers over purely domestic affairs, whether of internal commerce or of police. Patterson v. Kentucky, 1878, 97 U.S. 501, 503, 24 L.Ed. 1115; Allen v. Riley, 1906, 203 U.S. 347, 356, 27 S.Ct. 95, 51 L.Ed. 216, 8 Ann.Cas. 137.

■ Next, petitioners contend that the Commission's proceedings attack the utility of the invention. It is true, as they argue, that a patent does raise a presumption that the invention possesses utility. Remington Cash Register Co. v. National Cash Register Co., D.C.D.Conn.1925, 6 F.2d 585, 629. However, the presumption is not conclusive, but only prima facie. Cleveland Automatic Mach. Co. v. National Acme Co., 6 Cir., 1931, 52 F.2d 769, 770; Callison v. Dean, 10 Cir., 1934, 70 F.2d 55, 58. It is also important to note that an invention need not be capable of performing all the functions declared by the inventor. The statutory requirement of utility is met if it can accomplish one. Scovill Mfg. Co. v. Satler, D.C.D.Conn.1927, 21 F.2d 630, 634; In Re Oberweger, 115 F.2d 826, 828, 28 C.C.P.A., Patents, 749; Walker on Patents, Deller's Edition, Vol. 1, page 312, section 65. So, although we must assume that the Patent Office did find that Vacudex had some utility, it does not follow that it possessed all the useful qualities asserted for it by the inventor. With this in mind we point out that in the cease and desist order the Commission omitted two specifications laid in the complaint, those relating to saving of the muffler and tail pipe of an automobile by retarding them from rusting. In addition, the patent application reveals several other statements as to the utility of the invention not referred to in proceedings before the Commission. These useful qualities, if found to exist, world, without more, have sufficed to justify the granting of the patent. Therefore, proscription by the Commission of certain representations of utility does not constitute an attack upon the finding of the Patent Office that the invention did possess some utility. That finding can be accepted without rejecting the findings of the Federal Trade Commission that in certain particulars the advertising of petitioners did misrepresent the beneficial qualities of Vacudex.

In view of the foregoing considerations we are convinced that the representations concerning Vacudex forming the bases of the proceedings before the Federal Trade Commission did not come within the scope of the patent, and that said proceedings and the order to cease and desist did not constitute an attack upon the validity of the patent.

Several objections to the manner in which the hearings were conducted by the Commission have been raised. They are directed chiefly to the admission of evidence; the reopening of the case for additional testimony, and the sufficiency of the evidence to support the findings and order. In our opinion the objections are without merit. We think the proceedings were fairly conducted and that the action of the Commission in issuing the cease and desist order was supported by reliable and substantial evidence. Accordingly the order will stand affirmed. In conformity with the statute, Title 15, United States Code Annotated, Section 45(c), this court, by its order, will command obedience to the terms of the order of the Commission.

Affirmed and so ordered.

STEPHENS, Chief Judge, dissenting:

I am unable to agree with the disposition of this case made by the majority. It is conceded in the case that the representations made by the petitioners in their advertisements are a substantially accurate description of the utility of the patented device, Vacudex, as portrayed in the speci-

fication of the petitioners' patent.[1] In granting a patent the Commissioner of Patents in effect finds to be true the portrayal in the specification, that is to say, the assertions therein concerning the nature and method of operation and effect of the claimed invention. The Letters Patent incorporate and make a part thereof a copy of the specification in which the invention is described. Nevertheless the Federal Trade Commission contends that it has power, upon evidence considered by it, to find that the representations in the petitioners' advertisements are misleading and deceptive to the purchasing public, and power, therefore, to order the petitioners to cease and desist from making such representations.[2] Its cease and desist order, if valid, will render the grant of the patent in substantial part of no effect. The patent grants for the term of seventeen years the exclusive right "to make, use and vend the said invention . . .." If the utility of the invention as portrayed in the specification which is made a part of the Letters Patent cannot be advertised, then the invention, as a practical matter, cannot be sold. In effect, therefore, the Trade Commission, in issuing its cease and desist order, is asserting power to review and render in part nugatory the action of the Commissioner of Patents in granting the patent to the device in question. If the Trade Commission has such power in this case, it has it in all cases in which it may, upon evidence considered by it, reach a conclusion contrary to that of the Commissioner of Patents as to the correctness of the representations in the specification of a patent application. Thus the Trade Commission may assume to review and in

practical effect to set aside, so far as the right of a patentee to vend an invention is concerned, the action of the Commissioner of Patents in respect of any or all outstanding patents. I think the Trade Commission has no such power.

The rule for infringement cases that an issued patent has but "prima facie" or "presumptive" validity (cf. Gebhard v. General Motor Sales Corp., 1943, 77 U.S. App.D.C. 331, 332, 135 F.2d 248, 249; Allison Coupon Co. v. Bank of Commerce & Savings, 1940, 72 App.D.C. 82, 111 F.2d 664; Callison v. Dean, 10 Cir., 1934, 70 F.2d 55, 58; Cleveland Automatic Mach. Co. v. National Acme Co., 6 Cir., 1931, 52 F.2d 769, 770) lends, I think, no support to the position of the majority and the Trade Commission. The power of a United States court to determine the validity of a patent in an infringement suit arises from the statutory right of one accused of infringement to assert as a defense the invalidity of the patent which is the predicate of the action. 35 U.S.C. § 69 (1946). The justification for this statutory right is that, as to the accused in an infringement case, the patent has been issued ex parte; he has never had a hearing in respect of its validity. But the determination by the Commissioner of Patents that a claimed invention is patentable is not ex parte as to the United States. It is the action of the United States, i. e., of the Commissioner of Patents, that is, in practical effect—as said above—called into question by the Trade Commission, also an agency of the United States, in the instant proceeding.

I am aware of the ruling in Sola Electric Co. v. Jefferson Electric Co., 1942, 317

---

[1] The Federal Trade Commission states the question thus: "Does the Federal Trade Commission as a matter of law lack jurisdiction to ban false and misleading advertising if the misleading representations concern a patented device and *are within the scope of representations made to the Patent Office in connection with the application for the patent.*" [Italics supplied].

[2] Specifically, the order of the Trade Commission requires the petitioners to cease and desist from representing that

the device, or any substantially similar device, will:

1. Eliminate or reduce back pressure.
2. Save gasoline or oil.
3. Increase the power of the motor or cause it to give better performance.
4. Draw carbon, oil, or moisture from the muffler.
5. Reduce the vibration of the motor.
6. Give the motor greater acceleration or cause it to run more smoothly or more quietly.
7. Save tires.

U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165, that since the price-fixing provisions of a patent license agreement are, if not within the protection of a lawfully granted patent monopoly, violations of the Sherman Act, a patent licensee sued for royalties may offer evidence of invalidity of the patents upon which the license agreement is founded, notwithstanding rules of estoppel, whether local or federal, which would otherwise forbid him, because of his license agreement, to do so. But this ruling is of no force in the instant case because, again, the patent licensee, like the accused in an infringement case, was a private person and not a party to the issuance of the patent as was the United States herein.

Neither United States v. Masonite Corp., 1942, 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461, nor Standard Sanitary Mfg. Co. v. United States, 1912, 226 U.S. 20, 33 S.Ct. 9, 57 L.Ed. 107, which are relied upon in the majority opinion, appears to me to lend any force to the contention of the Trade Commission and the decision of the majority in the instant case. In respect of the Masonite case: The Masonite Corporation owned patents on a product known as "hardboard" and itself manufactured and sold the same. It constituted competing manufacturers of building materials its *del credere* "agents" for the vending of hardboard, through their respective sales organizations, at prices and under terms and conditions fixed by Masonite and to be followed by it. Masonite also agreed to issue to the "agents" at their request "a license to manufacture and sell hard boards" under its patents upon specified terms and conditions and for a cash consideration, but this option was not exercised by the "agents." The Court, treating the "agencies" for the purpose of the decision as bona fide *del credere* agencies, nevertheless held that the form in which the parties chose to cast the transaction was not to govern and that the "agency" arrangements in reality presented a Bloomer v.

McQuewan,[3] Adams v. Burke,[4] Hobbie v. Jennison[5] pattern wherein when a patented product " 'passes to the hands of the purchaser, it is no longer within the limits of the monopoly. It passes outside of it, and is no longer under the protection of the act of Congress.' " (316 U.S. at page 278, 62 S.Ct. 1070, 86 L.Ed. 1461, quoting from Bloomer v. McQuewan, 14 How. at page 549, 14 L.Ed. 532). The Court said:

...Doubtless there is a proper area for utilization by a patentee of a *del credere* agent in the sale or disposition of the patented article. A patentee who employs such an agent to distribute his product certainly is not enlarging the scope of his patent privilege if it may fairly be said that that distribution is part of the patentee's own business and operates only to secure to him the reward for his invention which Congress has provided. But where he utilizes the sales organization of another business—a business with which he has no intimate relationship—quite different problems are posed since such a regimentation of a marketing system is peculiarly susceptible to the restraints of trade which the Sherman Act condemns. And when it is clear, as it is in this case, that the marketing systems utilized by means of the *del credere* agency agreements are those of competitors of the patentee, and that the purpose is to fix prices at which the competitors may market the product, the device is, without more, an enlargement of the limited patent privilege and a violation of the Sherman Act. In such a case the patentee exhausts his limited privilege when he disposes of the product to the *del credere* agent. He then has, so far as the Sherman Act is concerned, no greater rights to price maintenance than the owner of an unpatented commodity would have. Dr. Miles Medical Co. v. John D. Parks & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 [316 U.S. at pages 279-280, 62 S.Ct. at page 1078, 86 L.Ed. 1461].

In the Standard Sanitary case, one Wayman, a defendant, but not himself a manufacturer, on condition of the elimination of unpatented hard enameled "seconds," secured from Standard Sanitary and other manufacturers options upon process patents for enameling iron sanitary utensils. A committee of six, including Wayman and five manufacturers' representatives, worked out, to be incorporated in license contracts, a plan for manufacturers' prices and jobbers' and dealers' resale prices. Under

---

[3] 14 How. 539, 14 L.Ed. 532 (U.S. 1852).

[4] 17 Wall. 453, 21 L.Ed. 700 (U.S. 1873).

[5] 149 U.S. 355, 13 S.Ct. 879, 37 L.Ed. 766 (1893).

the plan the manufacturers were not to sell to jobbers who did not also take a license and submit to a price schedule. Royalties were a given sum per day for furnace use, but 80% was returnable as "cash bail" if a licensee abided by all of the provisions of its license. Having obtained approval of this plan by a sufficient number in the industry, Wayman exercised his options, became the owner of the patents, and issued the licenses as planned. Eighty-five percent of the manufacturers and ninety percent of the jobbers were parties to the arrangements. In answer to a charge that these arrangements were in violation of the Sherman Act, it was sought to justify them under Bement v. National Harrow Co., 1902, 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058, and upon the ground that an undue number of the (unpatented) seconds were being produced, with consequent harm to the reputation of the superior patented product and to the consumer—since the seconds were "palmed off" as not defective. The seconds were said to be " 'discrediting the ware and demoralizing the market and business.' " (226 U.S. at page 42, 33 S.Ct. at page 12, 57 L.Ed. 107). The Court held that the licensing arrangements were illegal. Quoting from the Bement case, it recognized that the Sherman Act " 'clearly does not refer to that kind of a restraint of interstate commerce which may arise from reasonable and legal conditions imposed upon the assignee or licensee of a patent by the owner thereof, restricting the terms upon which the article may be used and the price to be demanded therefor. Such a construction of the act we have no doubt was never contemplated by its framers.' " (226 U.S. at page 40, 33 S.Ct. at page 11) But the Court held that the Wayman license agreements "transcended what was necessary to protect the use of the patent or the monopoly which the law conferred upon it. They passed to the purpose and accomplished a restraint of trade condemned by the Sherman law. . . ." (226 U.S. at page 48, 33 S.Ct. at page 14)

This statement of the Masonite and Standard Sanitary cases shows, I think, that they are irrelevant to the question in the instant case. They stand only for the general rule that a patentee's contractual arrangements must be limited in operation to the proper field of trade belonging to the patentee; or, otherwise stated, that the contractual arrangements may include any condition the performance of which is reasonably within the reward which the patentee by the grant of a patent is entitled to secure, but no other. Putting it still otherwise, these cases hold that if the subject matter of a contract which otherwise would be illegal because in restraint of trade is a patented article, this takes away the illegality only to the extent to which the field of trade controlled through the contract is coextensive with the field within which exclusive control has been granted by the patent law. This is well established, but it is not relevant to the question in the instant case as to the power of the Trade Commission to review collaterally the correctness of the decision of the Commissioner of Patents in respect of the utility of Vacudex as described in the petitioners' patent specification. There is no charge in the instant case that the petitioners were by contract or otherwise operating beyond the field of trade defined in the Letters Patent.

I am aware of the dictum of the Supreme Court in United States v. United States Gypsum Co., 1948, 333 U.S. 364, 386-8, 68 S.Ct. 525, 92 L.Ed. 746, to the effect that in an action brought by the United States to restrain alleged violation of the Sherman Act through patent licensing arrangements which included price-fixing provisions, the United States may attack and the court determine the validity of the patents upon which the licensing arrangements were predicated. But this has only the force of a dictum. In addition, the dictum is limited by the nature of the action and of the tribunal in which the action is brought. It warrants inquiry into the validity of patents by a United States court sitting in an equity proceeding to restrain an alleged violation of the Sherman Act through price-fixing provisions in patent license agreements. The ambit of this dictum is not so broad as to permit an indirect attack by the Trade Commission, an executive agen-

468

cy, upon the correctness of the action of the Commissioner of Patents in determining the utility of a claimed invention.

It is true that where a patent has been obtained by fraud imposed upon the issuing officer, or where such officer may have erred as to his power or made a mistake in the patent instrument itself, the United States may obtain cancellation of the patent in a judicial proceeding against the patentee. United States v. American Bell Telephone Co., 1888, 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450. But the reach of this case is not great enough to permit collateral attack by an executive agency such as the Trade Commission upon the correctness of the action of the Commissioner of Patents. Moreover, there is no assertion in the instant case that the representations in the specification of the patent with respect to the utility of Vacudex were fraudulently made and the patent thereby fraudulently obtained, and there is no allegation that the Commissioner of Patents exceeded his power in issuing the Letters Patent or that there is a mistake in the patent instrument itself.

It is to be noted that in the instances in which Congress has authorized a court to review, either collaterally or directly, the action of the Patent Office in granting or denying a patent, it has done so explicitly. Thus it has given the Court of Customs and Patent Appeals jurisdiction of appeals from decisions of the Board of Appeals and the Board of Interference Examiners of the Patent Office as to patent applications and interferences, at the instance of an applicant for a patent or any party to a patent interference. 28 U.S.C. § 1542 (1948). Again, Congress has provided that whenever a patent on application is refused by the Board of Appeals of the Patent Office, or whenever any applicant is dissatisfied with the decision of the Board of Interference Examiners, the applicant, unless appeal has been taken to the United States Court of Customs and Patent Appeals and such appeal is pending or has been decided, may have remedy by a bill in equity in a United States District Court. Rev.Stat. § 4915 (1878), 35 U.S.C. § 63 (1946). In the

infringement cases in which the courts collaterally review the action of the Patent Office in issuing a patent, the right of the accused to set up invalidity as a defense is conferred by the statutory provision explicitly providing that the accused may plead the general issue. 35 U.S.C. § 69 (1946). See also 28 U.S.C. § 1498 (1948).

It is to be supposed that Congress recognizes that one of the first objectives in the essentials of good government is order and certainty in relations between government and citizen, and that this cannot be secured if the government itself is not to be depended upon to abide by its grants. The grant of a patent is a formal and solemn governmental act, reciting that "Whereas upon due examination made the said Claimant is adjudged to be justly entitled to a patent under the Law. Now therefore these Letters Patent are to grant unto the said [claimant], its successors or assigns for the term of Seventeen years from the date of this grant the exclusive right to make, use and vend the said invention throughout the United States and the Territories thereof." It must be presumed, I think, that the Congress did not intend that the Government itself, through an executive agency other than the Patent Office, might attack the Government's own grant except in the instances explicitly provided for by statute as above recited. I find nothing in the Federal Trade Commission Act, 15 U.S.C. §§ 41 et seq. (1946), which indicates that Congress contemplated that the Trade Commission, in exercising its power to restrain dissemination of false advertising, should make a redetermination of a factual finding of the Commissioner of Patents.

It is pointed out by the majority that although the complaint of the Trade Commission attacked as false, among other advertised assertions as to the utility of Vacudex, those that Vacudex "saves mufflers" and "saves tail pipes," nevertheless in its cease and desist order, which listed the assertions of utility which the petitioners are to be restrained from making, the Trade Commission omitted the assertions "saves mufflers" and "saves tail pipes." This, it is contended, means that the Trade Com-

mission in effect found that Vacudex "saves mufflers" and "saves tail pipes." It is then said that since the Commissioner of Patents in order properly to issue Letters Patent for the petitioners' claimed invention need not have found correct all of the assertions of utility made in the specification, it can be assumed that he issued the patent after finding to be correct the very assertions found to be correct by the Trade Commission, i. e., that Vacudex "saves mufflers" and "saves tail pipes," and that he did this without determining the correctness of the other assertions of utility in the specification. It is concluded that the Trade Commission, in passing upon other assertions of utility and finding them to be not correct, is not necessarily collaterally attacking a finding of the Commissioner of Patents.

But this argument is based upon a mere assumption as to what the Commissioner of Patents, in considering the application and issuing the Letters Patent, determined in respect of the utility of Vacudex. It is no less logical to assume that the Commissioner of Patents found correct the very assertions of utility found to be incorrect by the Trade Commission, and that the latter, therefore, is collaterally attacking the finding of the Commissioner of Patents. Either assumption is speculative. The record of the Patent Office proceeding is not before the court. Speculation is hardly a sound support for the claimed power of the Trade Commission to determine the correctness of the assertions of utility as made in the petitioners' patent specification and advertising. It is to be noted, moreover, that even if the assumption made by the majority—that the Commissioner of Patents determined and found to be correct only the assertions of utility which the Trade Commission itself found to be correct—is true, nevertheless the Trade Commission, in sustaining that finding of the Commissioner of Patents, is assuming to review it. It is the question of the power of the Trade Commission to review the action of the Commissioner of Patents that is the paramount issue in this case. For the reasons set forth above, I think the Trade Commission has no such power.