Booth, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This case is somewhat involved and difficult to state. Suit is brought upon a contract between the parties, by the terms of which the defendants agreed to pay a stipulated royalty for the use of a patented device. Lieut. Fletcher invented an improvement in breech mechanism for ordnance; his first invention was covered by Letters Patent No. 541042 and was duly assigned to the claimant company. The defendants acquired the right to use this device by a license agreement providing for the payment of a royalty of $90 *205 upon every gun manufactured by it of 8 inches in caliber and $100 for every gun of larger caliber. Two years later the patentee conceived an improvement upon the device covered by Letters No. 541042, applied for and received letters patent for the same, identified as No. 629673. This patent was also assigned to claimant company, and thereafter another license agreement was entered into between claimant and defendants for the use by the latter of this device, the royalty being fixed at $100 for each gun.' A dispute arose between the contracting parties respecting their rights under the license agreements, the claimant company contending that the use of the patent under Letters No. 629673 involved the use of patent No. 541042, inasmuch as patent No. 629673 was no more than an improvement upon No. 541042. The defendants contested this position, and after a controversy of some years an amicable adjustment was reached. The final license agreement explicitly provided for the payment of a royalty of $90 for each gun manufactured by the defendants when patent No. 541042 was used and $100 when patent No. 629673 was used. Up to this point the issue is clear and simple. Prior to April 24, 1905, the defendants publicly solicited bids for the manufacture of 86 guns, the patent device covered by Letters No. 629673 to be used therein, and the claimant company in said competitive letting having made the lowest bid was awarded the contract therefor.
Again on August 25, 1905, under exactly similar circumstances, the claimant company was awarded the contract for the manufacture of 60 additional guns. The 146 guns manufactured under these two contracts are the only guns upon which the defendants have refused to pay the royalty stipulated for in the license agreement, and it is for the royalty alleged to be due the claimant company because of their manufacture that this suit is brought. No contest as to use is involved and no dispute as to amount.
The defendants construe the contracts for the manufacture of the guns in a way inimical to their liability for the payment of royalties under the license agreement, and contend that not only by the express terms of the contracts for the manufacture of the guns is it released, but that in connec *206 tion therewith the releases executed at the time of final payment to the claimant company for the guns concludes the claimant upon the question of royalties. Another defense going alone to the question of manufacture by the defendants is interposed, it being insisted that the defendants’ liability under the license agreement for royalties extended only to guns manufactured in its own shops and under its direct supervision.
The vitality of claimant’s insistence reposes exclusively in the contention that the payment of royalties by the defendants under the license agreement was never included in the agreement for the manufacture of the 146 guns, or the releases executed at the time of final payment therefor. In fortification of the claim it is urgently pointed out that during the whole period of the contracts for the manufacture of the guns a vigorous dispute was in course between the parties herein upon the single question of the payment of royalties for the use of the invention; that not until after the conclusion of the contracts to manufacture was this dispute adjusted and reciprocal rights fixed; that the contracts to manufacture were made as independent agreements in no wise affecting the license agreement for the payment of royalties.
The scope of a contract, as well as the intention of the parties in making the same, is to be gathered from the instrument itself, unless ambiguities intervene so patent upon the face of the writing that extraneous testimony alone will explain them. What the parties intended to include and what they contracted to do in the contracts involved in this case is not, if we look to the contracts themselves, left in doubt. The defendants wanted certain guns manufactured; these guns were to be so made that under the specifications therefor the use of patent No. 629673 was unavoidable; the defendants knew of the existence of this patent, and had previously placed themselves, by the execution of the license agreement, in a position forestalling any contest of the pat-entee’s rights, so as a precautionary matter it was expressly provided in clause 5 of each of the contracts to manufacture that the successful bidder should indemnify it in case of *207 controversy over tbe Use of the patented devices. Clause 5 of the contracts set out in Finding VI is comprehensive; it is difficult to conceive the possibility of doubt as to its meaning, especially by one skilled in the art of gun making. The claimant company herein was assuredly placed upon notice as to the extent of the same, for its officers knew of the existence of the license agreement, and the very fact that differences existed between the company and the defendants respecting the amount of royalties to be paid under the license agreement, augments the apparent necessity for the defendants’ interposition of clause 5 in the contracts to manufacture.
The Government, by the terms of the agreement to manufacture, clearly intended to absolve itself from all pecuniary liability with respect to any patented device used by the manufacturer when it paid the full consideration mentioned in the contract. The contract was complete within itself, and it is inconceivable how the owner of a patent right contracting with respect thereto would execute an agreement: which upon the most casual examination would instantly en- j gender doubt as to his right to valuable royalties under another and independent agreement. The most ordinary precaution would have suggested some amendment reserving^its rights under the latter, especially so when the patentee and manufacturer were the same person. Why, in this case if the claimant prevails, it had an advantage to the full amount of royalties claimed herein in making up its bid, for if the defendants must pay in addition to the stipulated price for the manufacture of each gun the full amount of royalty preserved in the license agreement, the company could well afford to do the work cheaper than its competitors. It is admitted that a third party would have been obligated by clause 5 to either obtain the patentee’s assent to the use of the invention or pay the royalties due from the defendants under the license agreement.
The license agreement was one transaction, the contract to manufacture the guns was another, but in making the contract to manufacture the use of the patented device or any other device under patent was expressly provided for in the *208 payment of tbe general consideration for the undertaking. The contract and releases expressly cover this contingency.
As previously observed, the assignee of the patentee in this case became the contractor to manufacture for the defendants the very articles upon which his right to receive royalties under the license agreements might accrue. The contractor and the patentee being the same person, with full power and authority to make and vend the patented article, it has been uniformly held that in the absence of some special stipulation in the contract to manufacture respecting limitations as to the use of the patent that the title to the thing contracted for or purchased passes unencumbered as to the patentee’s rights of monopoly. The royalty for the use of the patented article is included in the price paid for the same and can not be again exacted. As was said by the court in Goodyear v. The Beverly Rubber Co., 1 Cliff., 348-356, “ By virtue of the contract of sale, and the unconditional delivery of the manufactured article, it passes outside of the monopoly and is no longer under the peculiar protection granted by patented rights.” See also Gottfried v. Miller, 104 U. S., 521; Mitchell v. Hawley, 16 Wall., 544. Following the principle long since established by the Supreme Court, it is quite obvious that even in the absence of the covenants contained in clause 5 the claimant company, because of its status in this case, could not recover.
■ The United States under the license agreements, both of which were in full force and effect during the whole course of the contract period, acquired a right to use the claimant’s patent. It is true a dispute was pending in reference to the compensation to be paid for said use, which finally culminated in the merger of the whole matter into a single agreement; nevertheless the defendants had the right to use the patents. Under these circumstances the officers of the Government might well have incorporated into the contract to manufacture the 146 guns a stipulation exhibiting this fact to proposed bidders and thereby secured a reduced bid for the undertaking. In the face of this fact, however, the contrary course was pursued, and, with full knowledge of its own and patentee’s rights under the license agreements, it *209 charged the contractor with direct and positive liability for the nse of patented inventions, evidencing a willingness to pay a greater compensation, sure to follow in view of clause 5.
In view of what has been said it is needless to discuss the remaining contentions. The petition is dismissed. It is so-ordered.